UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TED A. KLAUDT, People of the Republic of South Dakota, ex rel., Christian Appellation, | ) ) ) ) | Civ. 10-4091-KES |
| Petitioner, | ) ) ) | |
| vs. | ) ) | ORDER DENYING RELIEF AND DISMISSING CASE |
| ROBERT DOOLEY, Corp. Warden, Mike Durfee State Prison; M. MICHAEL ROUNDS, South Dakota Governor; CHRIS NELSON, South Dakota Secretary of State; MARTY JACKLEY, South Dakota Attorney General; GARY CAMPBELL, South Dakota Assistant Attorney General; PATRICIA DEVANEY, South Dakota Assistant Attorney General; RICHARD SABERS, South Dakota Supreme Court Justice; DAVID GILBERTSON, South Dakota Supreme Court Justice; JOHN K. KONENKAMP, South Dakota Supreme Court Justice; STEVEN L. ZINTER, South Dakota Supreme Court Justice; JUDITH MEIERHENRY, South Dakota Supreme Court Justice; LAWRENCE LONG, former South Dakota Attorney General, Honorable Judge; BRENT GROMER, DCI Agent; JAMES W. ANDERSON, Judge; JOHN L. BROWN, Judge; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

TIMOTHY MAHER, former Hughes    )
County States Attorney, Assistant   )
U.S. Corp. Attorney; and        )
KELLY MARNETTE, Hughes          )
County States Attorney.         )
                                )
          Respondents.          )

Petitioner, Ted A. Klaudt, is incarcerated at Mike Durfee State Prison. He moves pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Klaudt amended his petition to pursue a writ of certiorari, a writ of audita querela, and a writ of error coram nobis in addition to habeas corpus. He also filed an "emergency petition" to amend the reference to him in the caption of this action from TED A. KLAUDT to Ted a. Klaudt©. Klaudt further seeks an order of immediate release, moves to strike respondents' motion to dismiss and answer to his petition, and asks this court to order that a grand jury be convened to consider charging all respondents with treason. Respondents move to dismiss his petition for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They also argue that Klaudt has failed to exhaust his claims in state court.

## FACTUAL BACKGROUND

On January 17, 2008, Klaudt was convicted of four counts of second degree rape in the Sixth Judicial Circuit Court in Hughes County, South Dakota. Klaudt, a former state legislator, and his wife provided foster care

for children placed in their custody by the state of South Dakota. His convictions stem from a series of fake "fertility" exams that Klaudt performed upon two of his foster daughters.[1] Klaudt concocted a fake egg donation scheme and convinced the girl she could earn up to $10,000 per buyer if she sold her eggs to infertile women. Believing Klaudt, the victim allowed him to perform "exams" upon her when she was 17 or 18 years old. The incidents in question in this case occurred in Klaudt's hotel room in Pierre, during the state legislative session.

At the hotel, Klaudt produced a speculum, tape measure, latex gloves, a caliper, antibacterial gel, tubing, syringes, and a vibrator. Klaudt first conducted a breast exam, measuring the victim's nipples under her shirt and feeling the glands in her breasts, claiming he could determine how close she was to ovulation this way. Next, Klaudt checked her ovaries, by inserting his gloved fingers into her vagina and pressing down on her stomach with his other hand. Next, he would use the vibrator to perform what he called vaginal stimulation. He would then insert a speculum, insert a fluid into her vagina with a syringe, and then withdraw it, completing the "examination."

---

[1] Klaudt was also convicted of offenses in the Fourth Judicial Circuit in Corson County. He does not challenge the Corson County convictions in this petition. The Hughes County convictions involve only one of the two foster daughters.

Klaudt also wrote a series of e-mails to the victim, in which he pretended to be Terri Linee, a woman who claimed to be a middleman in the egg donation scheme. These e-mails promised payment and stated that clients had been found to buy the victim's eggs. At one point, Klaudt paid the victim $250 from his own accounts, although the victim believed it was a payment from the egg donation organization. A number of the e-mails pressured the victim to continue with the examinations and one even threatened to pursue a collections action against her if she did not go forward with the egg donation. After the victim left for college, Klaudt continued to contact her as Terri Linee and created other e-mail accounts to contact her, purporting to be other people. Some of the e-mails attempted to create problems in the victim's relationship with her boyfriend. Klaudt also used the other e-mail accounts to contact other people to spy on the victim. This pattern of harassment, coupled with very frequent phone calls from Klaudt, prompted the victim to change her phone number and tell her mother of the egg donation scheme and exams. The South Dakota Department of Criminal Investigation was contacted, and it began an investigation.

After a jury trial, Klaudt was convicted of four counts of second-degree rape and sentenced to eleven years in prison on each count, to run consecutively. *See* Docket 23-6. The South Dakota Supreme Court affirmed

his convictions on direct appeal. *State v. Klaudt*, 2009 SD 71, 772 N.W.2d 117. Klaudt did not file a writ of habeas corpus in state circuit court. He did attempt to file some papers captioned as a state habeas case, but he never stated grounds for relief or facts to support them, as required by SDCL 21-2-3 and 21-27-16.1. The papers were returned to him by the clerk of courts and were never filed in state court. On July 14, 2010, Klaudt filed his federal petition.

**DISCUSSION**

**I.     Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254**

This court may not consider a claim for relief in a habeas corpus petition if the petitioner has not exhausted his state remedies. 28 U.S.C. § 2254(b). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). But "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). "[T]he exhaustion rule is not a rule of jurisdiction, and sometimes the interests of comity and federalism are better served by addressing the merits." *Padavich v. Thalacker*, 162 F.3d 521, 522 (8th Cir. 1998) (internal citations omitted).

This is particularly true when, as is the case here, the claims are non-meritorious. *Id.* Thus, the court considers the merits of Klaudt's claims.

### A.    Adequacy of Indictment

While Klaudt's petition is incomprehensible in places, his first ground for relief appears to challenge the sufficiency of the indictment. He argues that "the co-respondent's [sic] have all failed to fully disclose the nature and cause of the respondent's action by answering the Petitioner's demand for a bill of particulars." Docket 1 at 6. Respondents argue that the indictment was sufficient.

"[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Cokeley v. Lockhart*, 951 F.2d 916, 918 (8th Cir. 1991) (internal citations omitted). "This fundamental component of due process, guaranteed under the sixth amendment, is incorporated into the fourteenth amendment and cannot be abridged by the states." *Id.* Moreover, under the South Dakota Constitution, a criminal defendant is afforded the right to be informed of the charges against him by indictment or information. S.D. Const. art. VI, § 10. To determine whether a criminal defendant has received adequate notice, the reviewing court examines the charging document. *Cokeley,* 951 F.2d at 918. The adequacy of the charging document is primarily a question of state law. *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000). "For an indictment to be

sufficient, it must contain the elements of the offense charged such that it apprises the defendant with reasonable certainty of the accusations against him, and it must enable him to plead an acquittal of conviction as a bar to future prosecutions for the same offense." *State v. Basker*, 468 N.W.2d 413, 416 (S.D. 1991).

Klaudt was given adequate notice of the charges against him. The Hughes County indictment informed him that he was charged with four counts of second-degree rape, in violation of SDCL 22-22-1(2). See Docket 23-1. The indictment also identified the victims and informed him that the offenses took place in January, February, and March of 2005 and January and February of 2006. Moreover, the elements of the crime were pleaded and the victims were identified by their initials.[2] The indictment was returned by a legally constituted and unbiased Hughes County grand jury. Moreover, Klaudt did not challenge the sufficiency of the indictment before or during the pendency of trial; thus, his current challenge is untimely. *See*

---

[2] The indictment set forth four separate counts. Other than the dates, they all read:

> That on or about January or February of 2005, in the County of Hughes, State of South Dakota, Ted Alvin Klaudt did commit the public offense of second degree rape (SDCL 22-22-1(2)) in that he did accomplish an act of sexual penetration with his foster daughter, A.M., through the use of force or coercion[.]

Docket 23-1.

SDCL 23A-8-3 ("Any . . . request which is capable of determination without the trial of the general issue may be raised before trial by motion . . . The following must be raised *prior to trial* . . . (3) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time *during the pendency* of the proceedings[.]")  (emphasis added). *See also* Fed. R. Crim. P. 12 ("The following must be raised *before* trial . . . a motion alleging a defect in the indictment or information–but at any time *while the case is pending*, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or state an offense.") (emphasis added). Because the indictment was constitutionally sound, Klaudt's first ground for relief fails on the merits.

**B.    Jurisdiction of the Court**

Klaudt also asserts that the Sixth Circuit Court in Hughes County did not have personal or subject matter jurisdiction over him and his offenses. His primary argument is that the trial court lacked jurisdiction over him because the American flag in the courtroom had fringe, which, according to Klaudt, rendered the court a military tribunal. Docket 1. Klaudt's second argument appears to contend that because he renounced his American citizenship after his conviction, the Hughes County judgment against him is

8

invalid. *Id.* Respondent argues that the court had both personal and subject matter jurisdiction over Klaudt.

Klaudt's argument that the presence of fringe on the American flag affected the jurisdiction of the court is frivolous. It has been rejected by numerous courts, including this one. *See, e.g., United States v. Mackovich*, 209 F.3d 1227, 1234 (10th Cir. 2000) (rejecting the argument as frivolous and collecting cases); *McCann v. Greenway,* 952 F. Supp. 647, 651 (W.D. Mo. 1997) ("Jurisdiction is a matter of law, statute, and constitution, not a child's game wherein one's power is magnified or diminished by the display of some magic talisman."); *United States v. Schiefen*, 926 F. Supp. 877, 884 (D.S.D. 1995) ("Federal jurisdiction is determined by statute, not by whether the flag flown is plain or fringed."); *State v. Hall*, 8 S.W.3d 593, 604 n.6 (Tenn. 1999) ("From a historical and legal standpoint, the use of fringe on the flag has no inherent or established symbolism. It has nothing to do with the jurisdiction of the court or with martial law. It is purely a decorative addition to enhance the appearance of the flag."). Accordingly, this claim is without merit.

Klaudt's second argument concerns his declaration of expatriation. He appears to be arguing that because he filed a declaration of expatriation after his Hughes County conviction, the court lacked jurisdiction over him. This argument is also meritless.

Expatriation is the voluntary renunciation or abandonment of nationality and allegiance. *Perkins v. Elg*, 307 U.S. 325, 334 (1939). Under the common law, there was no right of expatriation; a citizen had no power to renounce his or her citizenship without the consent of the sovereign. *Shanks v. Dupont*, 28 U.S. 242 (1830). On July 27, 1868, Congress enacted a statute declaring that expatriation was the natural and inherent right of all people. An Act Concerning the Rights of American Citizens in Foreign States, ch. 249, 15 Stat. 223 (1868) (current version codified at 8 U.S.C. § 1481 (2005)). "The stated purpose of the Act was to protect naturalized citizens of the United States while in foreign jurisdictions." *People v. Jones*, 140 P.3d 325, 327 (Colo. App. 2006).

The heart of Klaudt's argument appears to be that somehow the state of South Dakota has been rendered a foreign nation and that the United States is a corporation, rather than a sovereign state. He quotes the Expatriation Act of 1868 and in particular, appears to be relying on § 3 of the Act, which provides:

> That whenever it shall be made known to the President that any citizen of the United States has been unjustly deprived of his liberty by and under the authority of any foreign government, it shall be the duty of the President forthwith to demand of that government the reasons for such imprisonment, and if it appears to be wrongful and in violation of the rights of American citizenship, the President shall forthwith demand the release of such citizen[.]

15 Stat. 223, § 3. But the Expatriation Act does not provide rights to someone who has renounced his United States citizenship; rather it is intended to

10

provide protections for naturalized American citizens abroad. South Dakota is not a foreign state; it is a part of the United States. Thus, the Act has no application to Klaudt's situation. "Contrary to [Klaudt's] contention, there is no language in the Expatriation Act of 1868 [or subsequent amendments to it] to suggest that Congress intended to immunize expatriated defendants from criminal charges committed within the United States. *Jones*, 140 P.3d at 328. "A person found within the United States cannot somehow exempt himself or immunize himself from the application of state law . . . by declaring himself a non-citizen." *Estate of Casimir v. New Jersey*, No. 09-4004, 2009 WL 2778392 at *5 (D.N.J. Aug. 31, 2009) (holding that a criminal defendant's purported expatriation did not prevent a state court from exercising jurisdiction over him). Thus, the Expatriation Act of 1868 has not been violated by respondents.

Moreover, the language Klaudt relies upon is no longer found in the United States Code. The Expatriation Act of 1907 amended the 1868 Act to define the manner in which a United States citizen could lose his or her citizenship. Act of Mar. 2, 1907, 34 Stat. 1228. By 1940, the 1907 Act had been repealed and the Expatriation Act of 1868 was reenacted. 8 U.S.C. § 808. In 1940, Congress enacted the Nationality Act, 54 Stat. 1137, to codify the nationality laws and expanded the grounds for loss of nationality. The Immigration and Nationality Act of 1952, 18 U.S.C. § 1481, further expanded the grounds for loss of citizenship and eliminated some of the language on which Klaudt relies. The current version of the Expatriation Act provides:

(a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality--

(1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or

(2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or

(3) entering, or serving in, the armed forces of a foreign state if
(A) such armed forces are engaged in hostilities against the United States, or
(B) such persons serve as a commissioned or non-commissioned officer; or

(4)(A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years if he has or acquires the nationality of such foreign state; or

(B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or

(5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

(6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or

(7) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of Title 18, or willfully performing any act in violation of section 2385 of Title 18, or violating section 2384 of Title 18 by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction.

(b) Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after September 26, 1961 under, or by virtue of, the provisions of this chapter or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence. Any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this chapter or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

8 U.S.C. § 1481. The current version of the Act does not reference wrongful incarceration or provide any indication that Congress sought to immunize expatriates from criminal prosecution. Accordingly, Klaudt's argument that the state of South Dakota lost jurisdiction over his criminal acts when he filed his declaration of expatriation is meritless.

Respondents correctly assert that the court had both personal and subject matter jurisdiction over Klaudt when he was convicted. Under South Dakota law, "[a] court acquires personal jurisdiction over the accused by his presence before the court, irrespective of the events procuring his presence." *State v. Haase*, 446 N.W.2d 62, 64 (S.D. 1989). Klaudt appeared in court on the charges against him; thus, the Hughes County court had personal jurisdiction over him despite his current assertions that he appeared under protest. "[A] valid and sufficient information [or indictment] confers subject matter jurisdiction upon the court." *State v. Janssen*, 371 N.W.2d 353, 356 (S.D. 1985). As discussed herein, the indictment issued against Klaudt was valid and sufficient. Therefore, the court also had proper subject matter jurisdiction. Thus, Klaudt's second ground for relief–an asserted absence of jurisdiction–fails.

## II.    **Writ of Certiorari**

Klaudt also seeks a writ of certiorari. A writ of certiorari is an extraordinary writ issued by an *appellate* court, at its discretion, directing a lower court to deliver the record in the case for review. *Black's Law Dictionary* 220 (7th ed. 1999) (emphasis added). A writ of certiorari is not available to Klaudt.

This court, as a United States District Court, does not have appellate jurisdiction over the South Dakota state courts. Rather, United States district courts are courts of *limited jurisdiction.* With the exception of habeas corpus petitions, the lower federal courts lack subject matter jurisdiction over challenges to state court judgments. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The United States Supreme Court has exclusive federal jurisdiction to review most state court judgments. *Feldman*, 460 U.S. at 486.

Klaudt seeks the reversal of his Hughes County conviction and the affirmance of that conviction by the South Dakota Supreme Court, arguing that neither court had jurisdiction over him. Klaudt relies on 28 U.S.C. §§ 2104, 2106 in arguing that this court may review his conviction.[3] Neither

---

[3] Section 2104 provides for review of state court decisions. It specifically states:

> A review by the Supreme Court of a judgment or decree of a State court shall be conducted in the same manner and under the same regulations, and shall have the same effect, as if the judgment or decree reviewed had been rendered in a court of the United States.

28 U.S.C. § 2104. Section 2106 is also directed at appellate review. It provides:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate

statute confers appellate jurisdiction on this court to issue a writ of certiorari to a state court. Conversely, both statutes reference review by the United States Supreme Court or review by the Courts of Appeals for the federal circuits. Because this court is not an appellate court, it cannot issue a writ of certiorari to the state courts of South Dakota. Nor does this court have subject matter jurisdiction over a challenge to a state court judgment, except through a petition for habeas corpus. Accordingly, Klaudt's motion for a writ of certiorari is denied.

## III.    Writ of Audita Querela

Klaudt also seeks a writ of audita querela in addition to his other requests. A writ of audita querela is generally defined as a "writ available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses." *Black's Law Dictionary* 126 (7th ed. 1999). "The writ [of audita querela] has been abolished with respect to civil cases . . . but it remains available in limited circumstances with respect to criminal convictions." *United States v. Richter*, 510 F.3d 103, 104 (2d Cir. 2007). It is likely available where a legal objection to a

---

judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106.

conviction has arisen subsequent to the conviction and no other post-conviction remedy exists to redress the issue. *Id.* According to one circuit, the writ "survive[s] only to the extent that [it] fills the gaps in the current systems of post-conviction relief." *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001).

A writ of audita querela is unavailable to Klaudt in the Eighth Circuit. "A writ of audita querela is *not* available where other cognizable remedies exist." *United States v. Feist*, 346 Fed. App'x 127, 128 (8th Cir. 2009) (emphasis added). Where a prisoner may petition for a writ of habeas corpus, other cognizable remedies exist. *Id.* In this case, Klaudt challenges the legality of his conviction. The proper avenue for relief in this court is to seek a writ of habeas corpus under 28 U.S.C. § 2254, which Klaudt is pursuing. Alternatively, Klaudt may challenge the legality of his conviction through a state habeas corpus proceeding in South Dakota state court. Because these remedies exist, a writ of audita querela is not available to him.

## IV.     Writ of Error Coram Nobis

Klaudt also seeks a writ of error coram nobis. He argues that 28 U.S.C. § 2243 authorizes this court to issue a writ of error coram nobis. Docket 14. Section 2243 governs the issuance of a writ of habeas corpus by

a federal court. It provides, in part, that a court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Section 2243 does not apply to petitions for a writ of error coram nobis.

Coram nobis is a "writ of error directed to a court for a review of *its own judgment* and predicated on alleged errors of fact." *Black's Law Dictionary* 338 (7th ed. 1999) (emphasis added). By definition, a writ of error coram nobis is inappropriate in this instance. Klaudt does not seek review of a judgment of this court, but rather, a judgment of a South Dakota state court. A writ of error coram nobis is not available in federal court to attack state criminal judgments. *See Stubenrouch v. Sheriff of St. Louis Cnty.,* 260 F. Supp. 910, 911 (W.D. Mo. 1966). This court does not have jurisdiction to issue a writ of error coram nobis to a state prisoner. "A federal court which did not impose the sentence has no jurisdiction to issue a writ of error coram nobis[.]" *Sinclair v. Louisiana*, 679 F.2d 513, 515 (5th Cir. 1982). Accordingly, Klaudt is denied a writ of error coram nobis.

## VI.    Emergency Petition to Correct Caption of Action

Klaudt also filed an "emergency petition" to correct the caption of this action. Docket 21. Klaudt asserts that "[t]he use of TED A. KLAUDT is a fictitious name used to replace Ted a. Klaudt©[.]" He further argues that he "has filed the proper documents with the proper people to move his standings to and [sic] American Citizen, not subject to the 14th Amendment" and asks this court to review the filing for verification. Klaudt has not provided a filing indicating he has legally changed his name. Accordingly, his petition to amend the caption is denied.

## VII.    Motion For Immediate Release

Klaudt moves that he be immediately released. Docket 24. He argues that because respondents did not file an answer to his petition by October 21 his imprisonment is wrongful (reasoning that if his imprisonment were not wrongful, the government would have responded). On October 1, 2010, this court ordered respondents to file an answer or responsive pleading within 21 days of receiving service of Klaudt's petition by mail. Docket 15. Contrary to Klaudt's assertions, this court did not order a response by October 21, 2010. Respondents filed a motion to dismiss and answer on October 25, 2010. Docket 23. Moreover, Klaudt's claims are without merit. Thus, his motion is denied.

## VIII.  Motion to Strike Respondents' Motion to Dismiss and Answer

Klaudt also moves, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike respondents' motion to dismiss and answer to his petition. Docket 25. Klaudt argues that the caption of this case and correspondingly, the respondents' answer, "are against a fictious name." *Id.* at 2. It appears Klaudt takes issue with the fact that his name is written in all capital letters in the caption of this case. *Id.*

Rule 12(f) permits the court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may act on its own or on motion by a party. *Id.* Nothing in the respondents' motion to dismiss and answer is an insufficient defense, redundant, immaterial, impertinent, or scandalous. Moreover, Klaudt's argument that the "instruments" do not apply to him because his name is spelled in the caption in capital letters is "patently frivolous." *United States v. Denham*, No. 8-9012, 2009 WL 222984 at *1 (W.D. Mo. Jan. 29, 2009) (citing *Russell v. United States*, 969 F. Supp. 24 (W.D. Mich. 1997)). Accordingly, Klaudt's motion is denied.

## VIV.  Motion for Order Convening Grand Jury to Charge Respondents with Treason

Klaudt's final request is for this court to order that a grand jury be convened to consider charging respondents with treason. As a United States

District Court, this court does have a supervisory power over federal grand juries. But "a court may not exercise its supervisory power in a way which encroaches on the prerogatives of the executive or the grand jury itself unless there is a clear basis in fact and law for doing so."*In re Application of Wood*, 833 F.2d 113, 115 (8th Cir. 1987). It is well established that the executive branch has the exclusive authority and absolute discretion to decide whether to prosecute a case. *United States v. Nixon*, 418 U.S. 683 (1974). Klaudt has not established a clear basis in fact and law that would authorize this court to encroach upon the role of the United States Attorney's Office. Rather, Klaudt alleges, through his convoluted and implausible interpretation of history, that respondents have committed treason. Docket 27.[4] That is insufficient. *See Ripley v. Fry*, No. 07-4255, 2008 WL 4527795 at *2 (D. Minn. Sept. 29, 2008) (refusing to convene a

---

[4] Klaudt bases his argument that respondents have committed treason on his interpretation of history. His theories are that the United States has remained under martial law since the Civil War, that the United States is actually a municipal corporation, and that the Fourteenth Amendment "created an artificial person corporate entity franchise entitled citizen of the United States that was born into private corporate limited liability." Docket 27. Klaudt further theorizes that when the "several United States signed the treaty with Great Britain ending the Revolutionary War, it was  concession that all commerce would be regulated through British attorneys." Klaudt maintains that this condition still exists and that all attorneys are actually agents of the British Crown. Docket 27. Somehow, from these theories, he concludes that the various state officials named in this suit  are not bound by the Constitution and are, therefore, committing treason.

grand jury to investigate IRS agents based on allegations by a pro se plaintiff that the agents committed a crime by making false statements to the government). Consequently, Klaudt's motion is denied. It is

ORDERED that Klaudt's petition for writ of habeas corpus, for writ of certiorari, for writ of error coram nobis and for writ of audita querela (Docket 1) is denied.

IT IS FURTHER ORDERED that respondents' motion to dismiss (Docket 22) is granted.

IT IS FURTHER ORDERED that Klaudt's motion to amend the caption (Docket 21) is denied.

IT IS FURTHER ORDERED that Klaudt's motion for an order of immediate release (Docket 24) is denied.

IT IS FURTHER ORDERED that Klaudt's motion to strike respondents' motion to dismiss and answer to his petition (Docket 25) is denied.

IT IS FURTHER ORDERED that Klaudt's motion for an order convening a grand jury (Docket 26) is denied.

Dated December 22, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE